NATALIE K. WIGHT, OSB # 035576
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:22-cr-00102-MO |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **JAVEN JAMES PEDRO,** | |
| **Defendant.** | **Sentencing: April 30, 2024** |

The government asks the Court to sentence defendant to 108 months' imprisonment, to be followed by a six-year term of supervised release. Defendant's case highlights the dangers of fentanyl and the absolute devastation that fentanyl dealers like him have unleashed upon the community – and the lives they have taken. Defendant sold fentanyl to a 15-year-old child that resulted in the boy's death. And this was not the first-time defendant sold fentanyl to the victim. By his own admissions, defendant had previously sold fentanyl to the victim five to 10 times.

Like Russian Roulette, eventually the cylinder of the gun stops on a bullet and on February 24, 2022, defendant's drug dealing became fatal. While he did not intend to kill his

**Government's Sentencing Memorandum**                                                                                                                **Page 1**

victim that sentiment is of little, if any, solace to the family that lost their child. When defendant was given an opportunity on pretrial release, instead of taking it as an opportunity to make amends, he went right back to his original path and repeatedly violated his release terms and was quickly taken back into custody. Given the sentencing factors in 18 U.S.C. § 3553(a) a 108-month term of imprisonment is warranted.

**A.      Summary of Proceedings.**

On February 6, 2024, defendant pled guilty to Count 1 of an Information which charged him with the felony crime of Distribution of a Controlled Substance to a Person Under the Age of 21, in violation of 21 U.S.C. §§ 841(a)(1) and 859(a). As part of his plea he admitted that his conduct resulted in the death of a 15-year-old boy. The maximum sentence the Court may impose is 40 years' imprisonment, a fine of $2,000,000, and at least six years of supervised release. There is also a $100 fee assessment.

A Presentence Report (PSR) has been completed. Sentencing is currently set for April 30, 2024. The government believes that the facts underlying the defendant's count of conviction, his Sentencing Guideline calculations, his criminal history, and his personal history and characteristics are fairly outlined out in the PSR and within the factual summary of the plea agreement.[1] As the plea agreement noted, and what defendant agreed the government could prove beyond a reasonable doubt, is that:

> [O] or about February 23, 2022, within the District of Oregon, he knowingly and intentionally distributed controlled substances, to-wit: fentanyl, a Schedule II controlled substance, to Juvenile 1, a person under the age of 21. Defendant admits he sold 10 counterfeit M30 oxycodone pills, manufactured with fentanyl, to the victim, a 15-year old kid, who

---

[1]     There is one minor correction to the PSR. The PSR states that the victim was 16. PSR ¶ 20. The government has confirmed the victim was 15 at the time of his death.

**Government's Sentencing Memorandum                                                          Page 2**

> then used some of the pills and died of a fentanyl overdose the next morning. Defendant was arrested and, after being advised of his constitutional *Miranda* rights admitted selling the pills to the victim and he had sold pills to the victim multiple times in the past. The defendant knew he was distributing fentanyl or some other federally controlled substance, and he knew that Juvenile 1 was under the age of 21. At the time of the offense, defendant was at least 18 years of age. Defendant further admits that his distribution of fentanyl to Juvenile 1 resulted in the death of Juvenile 1 and the fentanyl he sold to Juvenile 1, which was consumed by Juvenile 1, was both independently sufficient to cause Juvenile 1's death and the but-for cause of Juvenile 1's death.

Plea Agreement at ¶ 6; *see also*, PSR ¶¶ 20 - 26 (discussing defendant's criminal activity).

On February 24, 2022, defendant was arrested by Salem Police Officers and a federal criminal complaint was filed later that night charging him with the distribution of a controlled substance. ECF 1.

Defendant made his initial appearance in federal court on February 25, 2022, and a U.S. Magistrate Judge released him on pretrial supervision. PSR ¶ 19. He did not last long on supervision. On June 23, 2022, as a result of numerous violations, his pretrial supervision was revoked. Defendant's pretrial release violations included: marijuana use; cocaine use; fentanyl use; curfew violations; failing to comply with scheduled urinalysis tests; failure to notify pretrial services of law enforcement contact; violating his GPS schedule; and, failing to participate in a substance use evaluation. *Id.* Defendant has remained in custody since his revocation.

**B.     Sentencing Guideline Calculations.**

The Court, "in determining the particular sentence to be imposed," is required to consider the "sentencing range established" by the U.S. Sentencing Guidelines. 18 U.S.C. § 3553(a)(4). "The Guidelines are 'the starting point and the initial benchmark,'. . . and are to be kept in mind throughout the process." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008)(quoting

**Government's Sentencing Memorandum**                                                                **Page 3**

*Kimbrough v. United States*, 552 U.S. 85, 108 (2007)). "All sentencing proceedings are to begin by determining the applicable Guideline range." *Id*.

Because defendant sold fentanyl to a minor, his initial Base Offense Level is 26, pursuant to U.S.S.G. § 2D1.2(a)(3). PSR ¶ 32, Plea Agreement ¶ 8. This Base Offense Level is not in dispute. The parties also agree that death resulted from defendant's commission of the offense and thus jointly recommend a 8-level upward departure in defendant's otherwise advisory sentencing guidelines, pursuant to U.S.S.G. § 5K2.1. Plea Agreement ¶ 10. This results in an adjusted Offense Level of 34.

Based upon defendant's Acceptance of Responsibility his offense level should be decreased by three levels, pursuant to U.S.S.G. § 3E1.1. PSR ¶¶ 39 - 40; Plea Agreement at ¶ 12. This results in an adjusted Offense Level of 31.

Given his juvenile adjudications for Assault in the Third Degree and Delivery of a Controlled Substance, he receives two criminal history points and his Criminal History Category is II. PSR ¶¶ 43 – 44, 46.

With an Offense Level of 31 and a Criminal History Category II, his suggested sentencing range is 121 to 151 months' imprisonment.

The U.S. Probation Office is recommending a sentence of 108 months' imprisonment, to be followed by a three year term of supervised release. PSR Sentencing Recommendation at *1. Defendant is free to seek a lesser sentence. Plea Agreement ¶ 15.

**C.    Government's Recommended Sentence.**

The government asks the Court to impose a sentence of 108 months' imprisonment, to be followed by a six year term of supervised release.

Defendant sold fentanyl to a 15-year old kid and ended up killing him. It is a tale that is tragic at every level and unfortunately one we repeatedly hear. Fentanyl is devastating the community and the death toll it is leaving within its wake is truly astronomical. In 2022, within the United States, fentanyl was responsible for over 200 deaths every day and a total of 73,654 people died from a fentanyl overdose.[2] For Americans aged 18 to 45, the leading cause of death is now fentanyl overdoses.[3] In the 12-month period ending in May 2023, more than 73,765 people in the United States died from overdoses related to fentanyl and other synthetic opioids, excluding methadone.[4] Here in Oregon opioids and synthetic opioids such as fentanyl are the leading cause of overdose deaths. Between 2015 and 2021, Oregon experienced a 932% increase in fentanyl overdose deaths.[5] In 2023, "Oregon had the highest rate of increase in fentanyl deaths in the nation with a one-year increase of more than 67[%], compared to a national average of 5[%]."[6] In 2021, Oregon had 1,171 overdose deaths and 74.2% of those overdose deaths involved at least one opioid and 65% involved at least one stimulant—illegally-made fentanyl was the most commonly involved opioid and methamphetamine was the most

///

---

[2] *Are Fentanyl Overdose Deaths Rising in the U.S.*, USAFACTS (Sept. 27, 2023), https://usafacts.org/articles/are-fentanyl-overdose-deaths-rising-in-the-us/.
[3] *DEA Administrator on Record Fentanyl Overdose Deaths,* GET SMART ABOUT DRUGS (Oct. 27. 2023), https://www.getsmartaboutdrugs.gov/media/dea-administrator-record-fentanyl-overdose-deaths.
[4] *Provisional Drug Overdose Death Counts*, CENTER FOR DISEASE CONTROL AND PREVENTION (Oct. 11, 2023), https://www.cdc.gov/nchs/nvss/vsrr/drug-overdose-data.htm.
[5] *Fentanyl by State Report*, FAMILIES AGAINST FENTANYL (Feb. 4, 2023) https://www.familiesagainstfentanyl.org/research/bystate.
[6] *Oregon, Washington see largest increases in fentanyl deaths since last year*, KPTV 12 (Sept. 26, 2023) https://www.kptv.com/2023/09/26/oregon-washington-see-largest-increases-fentanyl-deaths-since-last-year/.

commonly involved stimulant.[7] In 2022, synthetic opioids, such as fentanyl, accounted for over 800 fatal overdose deaths.[8]



While we recognize defendant is relatively young, this was not defendant's first venture into drug dealing. Furthermore, when he was placed on pretrial release and given the opportunity to change the course he was on with the full scope of services pretrial had to offer being made available to him, defendant instead chose to continue using drugs. To the government, Pretrial Services has described defendant as willfully noncompliant, repeatedly dishonest. and that substance abuse did not appear to be the crux of his noncompliance.

///

---

[7] *Drug Overdose Mortality by State*, CENTERS FOR DISEASE CONTROL AND PREVENTION (March 1, 2022) https://www.cdc.gov/nchs/pressroom/sosmap/drug_poisoning_mortality/drug_poisoning.htm; *SUDORS Dashboard: Fatal Overdose Data*, Centers for Disease Control and Prevention (Dec. 26, 2023), https://www.cdc.gov/drugoverdose/fatal/dashboard/index.html.

[8] *Oregon Overdose Prevention Dashboard*, Oregon Health Authority (April 24, 2024), https://oregoninjurydata.shinyapps.io/overdose/

**Government's Sentencing Memorandum** **Page 6**

Unfortunately, nothing any of us can do will turn back time. We cannot prevent defendant from selling fentanyl that resulted in a boy's death. We cannot undo the damage that fentanyl has caused within the community. Defendant was selling poison and that poison eventually killed a boy. What we do here today, as best we can within the structures of the criminal justice system, is hold defendant accountable for selling the fentanyl that resulted in the death of the 15-year old victim and hopefully bring some sense of justice and solace to the victim's family.

Accordingly, after evaluating the competing sentencing factors outlined in 18 U.S.C. § 3553(a), which include the nature and circumstances of the offense; the defendant's characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to provide just punishment for the offense; the need to protect the public from further crimes of the defendant; and, the need to provide the defendant with needed training or other corrective treatment, we ask the Court to sentence defendant to a term of 108 months' imprisonment, to be followed by a six-year term of supervised release. We believe the sentence is fair, reasonable, and in line with how similarly situated defendant's and cases have been handled.

///

///

///

We have not yet received any victim impact statements from the family nor restitution information. We would ask the Court to leave open the issue of restitution for 90 days.

At the time of sentencing, we ask the Court to dismiss the original indictment.

There is an appeal waiver.

Dated: April 24, 2024.

Respectfully submitted,

NATALIE K. WIGHT
United States Attorney

/s/ *Scott Kerin*

SCOTT M. KERIN, OSB # 965128
Assistant United States Attorney